Mr. Friedman, we'll hear from you first.  May it please the Court, Robert Friedman for Appellant Sandra Fiecke-Stifter. I'm going to try to reserve four minutes for rebuttal. Sandra's appeal rests on two basic propositions. The first is that if a servicer does not credit a timely payment and then charges a late fee for that timely payment, it violates the Truth in Lending Act. That's what we've alleged happened here. Sandra made payments in December 2021 and February 2022 that, had they been credited, would have prevented the assessment of late fees. That's the ultimate issue. I mean, you just stated the problem as though you win. The issue is whether it was necessarily not credited. Yes. That's what the briefs are all about. Well, so our position, Your Honor, is that the command, no servicer shall fail to credit, imposes a continuing obligation not to credit a payment. And you have a case for continuing obligation? I think it's the canon of construction that you apply the ordinary. Okay. You don't have a case. You have an argument based on canons of construction. Yes. We have an argument based on canons of construction, which we think is the ordinary method of interpreting statutes. And the canon of construction is ordinary usage. So when a command imposes — excuse me. When a command is only effective if it imposes a continuing obligation, that's how it's ordinarily understood, not to impose a temporary and ineffective obligation. You know, that's just factually your view of the world. Well, I think that if you can — Their argument is, wait a minute, we can credit and then we can reverse because of later discoveries or whatever. Yes, that's absolutely — That's just as plausible to me as your dicta. Okay. I'll try to persuade you that ours is the better reading. And the reason is that if you can credit and then uncredit, what you have happen is you have the sort of late fees for timely payments here. So I understand the dispute, Judge Loken, that we — that there was a late fee assessed for a timely payment. But if we — It's a different issue. I understand. And so I'm going to now make an argument based on that assumption being correct. And I'm happy to walk you through why we think that's correct if you'd like. But if that's correct, then we have a statute that is, I think, both sides agree, aimed at preventing servicers from charging artificial late fees. And here we have, again, if you're with me on that assumption about what the complaint alleges, you do have a late fee for a timely payment. Counsel, what about the simple little words, as of? Generally, in colloquial speech, as of means as of then we were in love. In accounting, as of means as of a certain date, Counsel. In accounting, it means as of a certain date and something can happen the day before and something the day after. But it means as of a certain date. So why doesn't the main statute here, which I think turns on the two little words, as of, settle the first issue about crediting? Crediting is also a banking term, as you know, because to you it's a debit, but to the bank it's a credit. But go ahead. Yeah, no, I think that as of supports our interpretation. As of means they don't need to credit it the day it comes in. But when it needs to be credited as of the date of it does come in before they charge a late fee. So if they're going to charge a late fee, that payment needs to be credited as of the date it was received. So if they want to charge a late fee in March, which is what happened here, before they do that, they have to look at the prior payments. And if there was a complete payment made in January, excuse me, in February and in December, that has to be credited as of the date of receipt. Okay. The next, though, if you put the words together, as of the date of receipt, doesn't that sound like it's supposed to be done on that day? I'm sorry. I'm sorry. It sounds like the payment has to be credited on that date. Right? On the day that it's received?  And not in some later reversal, some later change, some later modification. No, I think the case is that Congress meant for it to be done on that day. I think that the cases that we've cited actually say that as of means it doesn't need to be done on that day. If it needed to be done on the day it comes in, it would say credit on the date of receipt. What's the best of these cases you just referred to? For those two cases, there's one from the Arizona Court of Appeals and one from the Fifth Circuit. And, you know, I can provide those for you on rebuttal. Are they in your brief? Yes. Yes, they're in my brief that as of and on mean two different things. And I think that also that's the regulatory understanding. So before there was Section 1639F, there was Regulation Z. And the CFPB has also, after 1639F, promulgated a regulation. This is 12 CFR 1026.36Z. And if you look at the commentary, what it says is that you do not need to, there's no obligation to deposit the funds on the date it comes in. But when they are credited, they have to be credited as of the date of receipt. And I think if you go to the point in time that these late fees were assessed, Judge Benton, they were not credited as of the date of receipt. I think that's kind of an indisputable fact in the world here because if they were credited as of the date of receipt, there would be no late fee. There would be a timely payment on the books. And so that's the core of our. Now, wait a minute. You just collapsed two different things. The receipt and the physical receipt and the crediting. If I collapsed them, it was unintentional, Your Honor. You just said, okay, so that means it was. Well, receipt and crediting are not the same. And you just put them together. Then I must have misspoke. I apologize. I agree with you that receipt and crediting are not the same. And I think the fact that it uses as of here, the reason it uses as of is it's not trying to impose. So is the question whether the subsequent declaration of reversal of payment, is that fact or law, whether that somehow destroyed crediting? I think that it's both here. We needed to allege that there was a reversal, so that would be the factual component. And I think that we've alleged that, paragraph 99 of the complaint. But how do you instruct a jury on that question? You'd ask them to see whether there was a credit at the time that the late fee was assessed. There's a presumption that parties obey the law. Well, and it's a presumption. So now every lender in the country has to set up a new schedule to provide evidence that it, in fact, credited when it did what it was supposed to do? Well, I don't think that there's going to be any harm to consumers. This gets you class action relief? This is an individual case. This is not a class action case. It didn't start that way. On this claim, it did start that way. We brought a single class action on a theory that we haven't appealed. This has always been an individual claim. There's never been a class allegation. And I don't think it would require any new sort of paperwork. It's outside the complaint, but the defendants have submitted the loan statements, and you can see that there's no credit in Document 913. This is pages 100 to 101 of the appendix. The amount isn't credited. So that's how a consumer would be able to see. That's what the banks already do. And if there's a late fee assessed when there's no credit, then you know that there's been a violation. Counsel, doesn't the statute distinguish — sorry, were you going? No, I'll go next. No. Doesn't the statute distinguish except from credit? And that's the B section of 1639F. It does. It distinguishes except from credit. And to give except any meaning, doesn't that hurt your argument a lot? You won't be surprised to hear that I think that section B helps our argument.  And tell me how you — because it makes — you agree it makes different words, different meanings of excepted credit, for sure. Yes. Okay. Proceed. The consumer cares about the crediting because that's what's going to prevent the assessment of late charges or other financial consequences. The consumer doesn't care if the bank accepts the money. If the bank wants to send it back and give the consumer a windfall of crediting and the money, they'll happily take it. What I think section B is useful for is two things. The first is that it starts with a conditional, if a servicer, and then it goes on to say accepts the payment. And that applies here, right? The if applies in this case? In our case? Yeah. No, it does not. I thought they had some kind of a banking agreement where they claimed they were under B. But tell me if I'm confused with another section. Did you just tell me I'm wrong? Yes. I think you're wrong.  Sure. What about the fact that the complaint doesn't allege that there was a late fee charged? I think it does. You say in paragraph 101, by returning those payments after crediting them, mid-country's violated 1639FA. I'd point to paragraph 45 where we allege that there's been illegally assessed late charges. And what the district court did with that — that's not connected to the returning of the payments. It comes — so paragraph 40 mentions the returning of the payments. Paragraph 45 says there's illegally assessed late charges. The district court said these were illegally assessed late charges related to the foreclosure. There's no such thing as foreclosure late charges, so we think the court construed the allegations against us by saying those were foreclosure late fees, which should have been construed in our favor to be the sort of late fees that you ordinarily have. Judge Benton, if I could — All you had to do was put it in paragraph 101, but the problem is you pleaded a deficient theory in 101 because you allege returning the payments by itself was the violation. Well, I think that the allegations don't need to all be in the same part of the complaint. The complaint is read as a whole. We pointed this out to the district court in our opposition to the motion for judgment on the pleadings. This is in our brief. We explained that there was — You wanted him to piece together 101 and 45 and assume that the late charges referenced in 45 were charged for the returning of the payments? We didn't want him — In connection with the returning of the payments? We didn't want him to piece it together on his own. We helped him piece it — or we tried to help him piece it together by, in our brief, pointing specifically to that paragraph, paragraph 45, and explaining that they were backfilling the accounting. I'm already into my rebuttal time, but, Judge Benton, I do just want to return to Section B and explain why I think it helps. It begins with the conditional, if a servicer, and it then goes on to say accepts a payment. That same language isn't in Subsection A. So Subsection B clearly contemplates that if you violate the written instructions, which are, you know, send your payment to headquarters, don't walk into the retail branch, then the servicer has the ability to not accept the payment and not credit. That same language doesn't appear in Section A. Midcountry's reading engrafts it into Section A, and we think when Congress leaves it out, that should be respected. Thank you. I'll reserve the rest of my time. Can you say that the late charge is related to the foreclosure because paragraph 5 lists several things and then says related to the foreclosure? Paragraph 45, yes. Forty-five. Yeah, yeah. Excuse me. Yeah, and we walk through this in our brief. What the Court basically did is take the phrase related to the foreclosure and used it to modify everything in that paragraph. You know, I'm not going to walk through the last sentence. It's a seated candidate for an allegation of the complaint, but you need to construe the allegations in the complaint in favor of the plaintiff. And we think that, or we know. Which things are related to the foreclosure in your view? The costs and fees. About interest. It says interest and costs and fees related to the foreclosure. Go ahead. Yeah. The interest continues to accrue as foreclosure approaches. But the key point for construing this allegation is that there's no such thing as a foreclosure lay charge, or at least I'm not aware of one. And we made this point in our opening brief, and opposing counsel didn't point to any. Even if there was one, it should be construed consistently with our theory, which is what we specifically asked the Court to do. I'm going to try and reserve my last minute for rebuttal. Very well. You may do so. Mr. Asmus, we'll hear from you. May it please the Court, counsel, good morning. My name is Jason Asmus. I represent the Appalese Mid-Country Bank and the law firm of Taft, Stettinius, and Hollister. I want to start where the Court was at with the TILA claim against Mid-Country. And the plain language, Judge Benton, as you described of the at-issue requirement is clear. No servicer shall fail to credit a payment to the consumer's loan as of the day of receipt. The only statutory requirement is to timely credit the payment as of the day to receipt, and Mid-Country did that. It did it on December 29th, and it did it on February 22nd. Counsel says that's not reflected in the books. It is reflected. Not only is it reflected in the books, it's reflected in the complaint. It's pled in the complaint, Your Honor, at paragraph 97. Mid-Country credited those payments against the loan account. Then they go on in paragraph 101 to say, and Judge Colleton got to this, by returning those payments after crediting them, Mid-Country violated 1639FA. 1639FA addresses the timing of the initial credit decision, the moment when the servicer decides whether to credit or to delay. That's the action that Congress sought to address with this requirement. And once a compliant credit has been made, the statute's obligation is satisfied. There is no room for statutory construction. The canons of construction don't need to be applied when the language is plain and unambiguous. Nothing in that statute in its text prohibits a servicer from subsequently reversing credits based on determinations that the loan was in default. The reversal involves a separate decision about whether to accept an incomplete or late payment, as was the case here, which is governed by common law or a contract law. It's not a TILA claim. You mentioned the word contract. Do you have any, whatever a writing is, it says in writing, any requirement about how the consumer is supposed to make the payment? We do not. It's not like the decisions that were cited, the Freedman case or the Cure case. Okay. So it doesn't expressly apply to this case. Precisely. But would you address the point that they're using three different terms here, accept, receive, and credit? Yes. And I want to, I was going to go to 1639FB next. Okay. And the argument that has been made, and I want to quote what the argument was, is the appellants say that Section B is that it provides a limited allowance for delayed crediting and that the servicer cannot outright reject a payment. But that's not what B says at all. B says that if a servicer specifies in writing the way to make a payment, which doesn't exist here, but if it had, and if a payment is made that doesn't comply with those specified requirements, and if the servicer then makes the decision to accept that payment, it doesn't allow for delayed crediting. It specifies a different date that it is to be credited. It is credited as of five days of receipt. It doesn't allow you to take five more days to credit. It specifies a different date and a different scenario that doesn't work here. Quite frankly, that statute is not relevant to our case because it doesn't, it isn't implicated, but it doesn't help the decision of whether there was a 1639FB. So it's not relevant when it uses the same words in the same statute passed by Congress on the same day? Well, but it's different. It's different words, as you pointed out, that B talks about. Some of the words aren't. It has the word credit counsel. Sure. And the as of receipt is also what shows that Congress was concerned about the date of crediting both as to A and as to B. The statute — You don't want to rest on the position it's irrelevant, do you? That it doesn't support the argument that they're trying to interpret — Okay. Section A as having credit meaning something different than irrevocably credit that you can't later do something with that payment. There was the talk, Judge Loken, in response to your question about cases cited as to the as of versus on. That was in their brief where they said what Judge Tostrud did made the requirement to that if you credit in compliance with the statute and then you later reverse, that that somehow made the initial crediting a fleeting directive. But it doesn't make it a fleeting directive at all. The question is when do you assess or measure compliance with the statute? And the directive is measured as of the date of receipt. Was it credited as of the date of receipt? Yes. Satisfied. Was it not credited on that day? No. Then not satisfied. And that's what Freedman said. Freedman said that that is the purpose of 1639FA is to make sure that a bank credits as of the date of receipt. Here was another case that we cited, the Northern District of Illinois case, where that was the case that involved a $10 rush processing fee that the plaintiff in that case said, well, that violates TILA because it made me pay this requirement in order to have the credit as of the date of receipt. And the court said the interpretation that here advances is too broad. It reads into the statute a requirement that does not exist. We believe that is our case here, that the appellants are asking this court to read into 1639FA a requirement that does not exist, that once you credit a payment as of the date of receipt, that you cannot later reverse that payment. That's not supported by the plain language of 1639FA. I want to turn for one second to the questioning at the end of Appellee's Counsel's argument about what allegations in the complaint about late fees and what did Judge Tostrud do. Paragraph 45 is the only paragraph in the complaint that talks about late fees, and Judge Tostrud noted that. And he held, look, it looks like what you are arguing for or what you are saying your harm is, plaintiff, is something different than failing to credit a payment as of the date of receipt. But what's important and what I want to point out to this Court is that Judge Tostrud did not look only at paragraph 45. He specifically in his order cited the argument that the plaintiff made in her opposition brief to our motion to dismiss. And that is at 162 of the appendix, and it's R. Doc. 19 at page 13. That's what he's, R. Doc. 19 is the opposition brief, page 13 is the page that Judge Tostrud cited to. He said, you said in your opposition brief that your damages were relating to the foreclosure. You didn't tie, as Judge Colleton said, you didn't tie the late fees to the failure to credit as of the date of receipt or to the later decision to reverse those payments because the loan was in default. Counsel, you're halfway through your argument, and you control your argument. But I do have to ask you about the other part of the case. FDCPA. Yeah, because Minnesota law is about the opposite of many other states, just bluntly. And, boy, when I read it, and the courts for 120 years have required exact and literal compliance, and they've got a lot of other words that say the same thing, but I think that's their headline words, and they say it in many other words. And if you look at the section 580.30, it's so clear about informing the I just think they do have a present right to possession. So it's a good point. Here's the response. It's a timing question. Judge Tostrud asked me the first question when I stood up in front of him. He said, when am I supposed to look for the present right of possession? And so the question is, when is that determined? And the answer under Minnesota State law, as the Supreme Court has said, is when the foreclosure proceeding begins. In other words, the present right of possession is something that either exists or it never existed. It is not something that is satisfied and later can be undone or lost or cut off, as the words of the appellee have used in their brief. The two cases I'm going to point you to, Your Honor, Adlinger, Minnesota Supreme Court case 1925, and I need to take one step back. There are four statutory requisites that are relevant to this case under 580.02. Adlinger addressed one of them, and it was the second requisite that was no action at law is pending. And here's where this decision is key. The plaintiff in that case said, well, yeah, there was an action pending, but we dismissed it two weeks before the foreclosure sale. And the court said, no, no, no. Foreclosure by advertisement is a statutory remedy, and all essential requisites for its exercise must exist when it is made use of. The requisites called for must exist when the first step is taken in the foreclosure. That's the time frame that the court looks to determine whether the statutory requisites are satisfied when it begins. Ruiz, the 2013 Minnesota Supreme Court case that's in the briefing, did the exact same thing. Third requisite, which was the assignment being of record, in that case what happened was the bank had three assignments. Two of them were of record. The third one did not get recorded until the day the first step in the foreclosure process was taken. And the Supreme Court said, well, you need to satisfy the requisites in 580.02 before the foreclosure proceeding is initiated. Again, the time frame we're looking at is when the process is initiated. And if you don't satisfy those requisites, and that's the word from the statute, then your foreclosure is void, and my position is that means you had a present right of possession. What about the old – these are all old cases, but, boy, they're apparently good law in Minnesota. What about the Peasley case? Are you familiar with it? 1901 case. I apologize, Your Honor, I am not. And I hope it was in the briefs. But it says, and I'm paraphrasing, but I'm warm, an improper property description in the notice renders everything else null and void. It does, Your Honor, and we're talking about two different things. So that would render a mortgage foreclosure void. Failing to – two things. Failing to satisfy. That's not in the requisites, is it, though? It's not. It's not in the requisites. That's bad for you. Go ahead. That's not the – so if you fail to satisfy the requisites, your foreclosure is void. Right. That's what Adlinger says. That's what Ruiz says. But failing to satisfy other procedural requirements also means your foreclosure can be voided. But in terms of the lens of the present right of possession, which is when you satisfy the statutory requisites, the time frame that you look at is as of the initiation of the foreclosure process. Based on Adlinger and Ruiz, because those requisites have to be satisfied before the foreclosure begins, and you can't later satisfy them, then it follows that if those requisites are satisfied, then the lender did have a present right of possession. Even the question of whether a foreclosure can be voided is different than the question of whether the requisites are satisfied to entitle the lender to make the foreclosure, which is the phraseology in 580.02. So a void, a completely void foreclosure does not eliminate a right to possession in your view, right? Unless. If it's completely void. Unless. A foreclosure that is voided for failure to comply with the non-statutory requisites is still void. A failure to satisfy the statutory requisites, which could result, which would result in a void foreclosure, also means that the lender didn't have a present right of possession. It's a timing issue. Do you have to have a present right of possession at the time the process is  Okay. And let's do another monster in the closet, if I can interrupt you because your time is short. Yes. The Riddell case I know is an unpublished Minnesota Court of Appeals case. Yes. Are you familiar with it? Yes. Okay. In 89. And they say demanding an excessive reinstatement amount under the 30, 580-030.  Violated here. Completely violated by a law firm. They say that that voids the foreclosure. It does. Okay. So why doesn't that? It voids the foreclosure, but it didn't void or eliminate or lose the present right of possession that would spring in to be an FDCPA claim.  I thought FEPCA went by state law. It does go by state law, and the question is what is a present right of possession? Is present right in the Riddell cases something like present right of occupation? Is that mentioned in Riddell? No. Not mentioned in any of the three cases that we've talked about. Present right of possession is not, I mean obviously not mentioned in Adlinger is 1925. Yeah. Not mentioned in Ruiz in 2013. Not mentioned in Riddell in 1989 either. Because none of them were FDCPA cases. So is your point that the right of possession must exist at the time of the nonjudicial foreclosure only? Exactly. At the time it commences. And then if there's a later action that would justify voiding the foreclosure, there's a remedy under state law, but not. You can file a second foreclosure. That's what I read in your briefs. The homeowner could void the foreclosure under state law then. Sure. Go ahead, Judge. And the two points are tied together, and it's why our position is what it is. We could fail to comply with 580.30. That would void the foreclosure sale if that claim had been brought. The result of that, though, is not that there was not a present right of possession because there still was a default, there still was recorded mortgages, there still was no action at law pending. And it's why we say in our brief we could restart the foreclosure process. If it's voided, it doesn't ineluctably follow that we had no present right of possession or somehow that the requisites weren't satisfied. They were always satisfied. You mean you could restart it if the homeowner got it voided or the property owner got it voided? Sure. If it was voided. Is that what you mean? Yes. Okay. Yes. The foreclosure could be restarted because all it did is void the foreclosure. It didn't excuse the defaults. Now, if the restart of that process resulted in the loan being paid off, then we obviously would have nothing to do there. But, again, my final comment here is the timeframe for determining the present right to possession is when the foreclosure process initiates upon satisfaction of 580.02, and it is not something that must continue throughout the entirety of the process. If it did, every violation of the dozens and dozens and dozens of foreclosure requirements in 580 would result in an FDCPA claim. Thank you. Thank you, Your Honors. All right. Thank you for your argument. We'll hear a brief rebuttal. Mr. Friedman? On the FDCPA, I think you, this Court, should look to Clarin v. Minnesota Repossessors, page 660. I couldn't understand. Clarin v. Minnesota Repossessors, page 665 of the opinion. This Court said it asked whether there's a wrongful possession under State law. So the car repossession cases show you can have a present right to possession at time one. It could be cut off by a failure to exercise those rights properly. And if the foreclosure is void under State law, any ensuing possession would be wrongful. My second point, Judge Loken, I don't want to leave you with the wrong impression. What I'm saying about their bills is that at the time the late fee was assessed, that's when the credit did not show up. I acknowledge he's right. It was initially credited. That's the problem. And that brings me to my third point, that what their interpretation allows is essentially what I would call an accounting gimmick. You can credit and then uncredit. And that's the outright rejection that we're referring to in subsection B that you cannot do. You cannot credit, uncredit, and skip over the five-day limit. You can't credit and uncredit and skip over subsection A's mandatory provision. If I can, I'm out of time. Yes, your time has expired. So thank you for your argument. Thank you. The case is submitted and the Court will file a decision in due course. Thank you.